**The STATE of Texas and City of Austin, Appellants,**

v.

**WESTGATE, LTD., et al., Appellees.**

**No. 3–90–060–CV.**

Court of Appeals of Texas, Austin.

Nov. 21, 1990.

Rehearing Overruled Dec. 19, 1990.

---

Iris Jones, City Atty., James Noble Johnson, Asst. City Atty., Austin, Barney L. Knight, Bickerstaff, Heath & Smiley, Austin, for appellants.

John McClish, Carole Tower, Womack & McClish, P.C., Austin, for appellees.

Before SHANNON, C.J., and ABOUSSIE and JONES, JJ.

ABOUSSIE, Justice.

Appellants, the State of Texas and City of Austin (collectively, "the City"), appeal from a judgment awarding appellees Westgate, Ltd., and its lienholders (collectively "Westgate") damages for both statutory condemnation of Westgate's property and as recovery on Westgate's inverse condemnation claim. The judge granted Westgate's motion for judgment notwithstanding the jury's answer to one of the questions. The trial court granted appellees recovery in the amount of $3,367,000, less the $2,653,369 award of the special commissioners previously deposited in the court's

registry and withdrawn by appellees, thus rendering judgment for appellees in the amount of $713,631, plus interest and court costs. We will reverse the judgment; we will here render judgment in part and remand the cause in part.

The City initiated condemnation proceedings in 1988 to acquire right-of-way for U.S. Highway 290. Westgate appealed the special commissioners' award as failing to award them all of the damages to which they were entitled, and asserted a cross-claim [1] alleging a cause of action in inverse condemnation. Westgate sought to recover lost profits that it claimed it suffered as a result of the City's negligence in failing to inform Westgate of the prospect of condemnation and as a result of the City's undue delay in instituting condemnation proceedings.

Specifically, Westgate charged that the City failed to notify them of the plans during the period of December 1984 through March 1985 when the City was engaged in the site plan permitting process for the project. They complain that, because the City negligently failed to inform them, they did not learn of the potential highway project until the City's public announcement in October 1985, after construction of Westgate's shopping center was virtually complete. Westgate also asserted that it suffered compensable damages because the City thereafter unduly delayed commencing condemnation proceedings by about three years.

The trial court granted judgment on a jury verdict in favor of Westgate, compensating it both for the statutory condemnation damages and, on a theory of inverse condemnation, for lost profits as consequential damages for the City's negligent failure to inform and undue delay.

*The Elements of a Cause of Action in Inverse Condemnation*

The City argues that the trial court erred in rendering judgment for Westgate under the theory of inverse condemnation be-

---

**1.** Although labelled a "cross-claim" in Westgate's pleadings, it would be more accurately described as a counterclaim because it is a claim by one party against an opposing party. Tex.R. Civ.P.Ann. 97(a) (1979).

cause Westgate failed to plead and prove the elements necessary to recover in inverse condemnation. The City argues that in order to successfully assert a claim in inverse condemnation, the landowner must establish that there has been a material and substantial interference with the owner's use of or access to his property. In the absence of such a showing, there can be no recovery for a cause of action in inverse condemnation, and therefore, the award of $633,000 damages for the inverse condemnation must be reversed. The City's points of error require us to determine whether Westgate alleged and proved a cause of action in inverse condemnation.

Condemnation is the process by which property of a private owner is taken for public use, without consent, but upon the payment of just compensation. *Hubler v. City of Corpus Christi,* 564 S.W.2d 816, 820 (Tex.Civ.App.1978, writ ref'd n.r.e.). An action for inverse condemnation is the appropriate avenue of relief for a property owner whose property has been taken for public use without due process or without institution of proper condemnation proceedings, and who wishes to recover compensation for that loss. *Hubler,* 564 S.W.2d at 820; *City of Abilene v. Burk Royalty Co.,* 470 S.W.2d 643, 646 (Tex.1971).

In an inverse condemnation suit, the complainant's land must have been taken or damaged within the meaning of the Texas Constitution. *Hubler,* 564 S.W.2d at 822. To be entitled to compensation for inverse condemnation under the Texas Constitution, one must allege and prove that his property has been "taken, damaged or destroyed for or applied to public use." Tex. Const. Ann. art. I, § 17 (1984). Texas law defines such taking, damage, or destruction as: (1) actual physical appropriation or invasion of the property, or (2) unreasonable interference with the landowner's right to use and enjoy his property. *Allen v. City of Texas City,* 775 S.W.2d 863, 865 (Tex.App.1989, writ den.). Acts short of a physical invasion can amount to a compensable taking where governmental agencies have unreasonably interfered with the landowner's access to

his property or have otherwise unreasonably interfered with the landowner's right to use and enjoy his property. *Hubler,* 564 S.W.2d at 820.

Property has been damaged for a public use within the meaning of the Constitution when access to the property is materially and substantially impaired. *City of Waco v. Texland Corp.,* 446 S.W.2d 1, 2 (Tex.1969). Determining whether one's access has been impaired to an extent that constitutes a taking of property for a public use under Article I, Sec. 17, of the Constitution is a question of law. *City of Waco v. Texland Corp.,* 446 S.W.2d at 2; *DuPuy v. City of Waco,* 396 S.W.2d 103, 110 (Tex.1965).

To show a material and substantial interference with access to one's property, it is necessary for the owner to prove that he has been subjected to one of three possible situations: (1) a total but temporary restriction of access; (2) a partial but permanent restriction of access; or (3) a temporary limited restriction of access brought about by an illegal activity or one that is negligently performed or unduly delayed. *City of Austin v. Avenue Corp.,* 704 S.W.2d 11, 13 (Tex.1986); *State v. Sungrowth VI, California, Ltd.,* 713 S.W.2d 175, 177 (Tex.App.1986, writ ref'd n.r.e.).

In this case, Westgate insists that it proved itself entitled to recover on its claim of inverse condemnation because it showed that it suffered a temporary partial taking of the sort described in *Avenue* as the third kind of substantial interference. The analogy is inapposite. Although Westgate cites part of the *Avenue* decision when it complains that the City negligently failed to notify it of the plans and unduly delayed the condemnation proceeding, Westgate never pleaded or proved that the necessary prerequisite condition resulted: *a temporary limited restriction of access.* Thus, it never showed that it suffered a material and substantial interference with access as a result of any failure to inform or undue delay on the part of the City.

Even if we accept the charges of negligence and undue delay as true, appellees

fail to make a case in inverse condemnation because they admit that the City did not impose a physical barrier or restrict access to the property. In response to questions on cross-examination, Mr. Robert Randolph, general partner of the limited partnership, Westgate, Ltd., conceded that the City did not interfere with or physically block access to the subject property.

■ It is well settled that any harm arising from the mere announcement or pendency of a project is not compensable. *Hubler*, 564 S.W.2d at 821; *State v. Vaughan*, 319 S.W.2d 349, 355 (Tex.Civ.App.1958, no writ). Even the announcement of a projected public improvement together with the preparation of plans and maps showing the property in question within the limits of the project, without interference with the landowner's use, does not constitute a present taking. *Hubler*, 564 S.W.2d at 822; *Thurow v. City of Dallas*, 499 S.W.2d 347, 348 (Tex.Civ.App.1973, writ ref'd n.r.e.); *City of Houston v. Biggers*, 380 S.W.2d 700, 704 (Tex.Civ.App.1964, writ ref'd n.r.e.), cert. denied, 380 U.S. 962, 85 S.Ct. 1105, 14 L.Ed.2d 153 (1964).

Westgate cites two cases in support of its assertion that it need not claim an actual physical interference with the use and enjoyment of its property in order to state a cause of action in inverse condemnation. Both of the cases are distinguishable from the facts here; both involve refusals of permits during pre-condemnation periods such that the refusals denied the landowners the full use and enjoyment of their property. In one, the court held that the landowners lost all use of their land when the city rejected their third application for a permit, even though they had met all its requirements, because the city wanted to preserve the land as a scenic easement. *City of Austin v. Teague*, 570 S.W.2d 389, 394 (Tex.1978). In the other, the city also interfered with the landowner's use of property when it denied permits for the purpose of preventing private development that would increase the cost of the city's planned future acquisition of the property. *San Antonio River Auth. v. Garrett Brothers*, 528 S.W.2d 266, 273 (Tex.Civ.

App.1975, writ ref'd n.r.e.). There is no allegation in this case that the City interfered with Westgate's use and enjoyment by denying it permits.

Westgate has failed to prove its right to recover in inverse condemnation; the failure to notify and undue delay of which it complains do not rise to the requisite level of interference with access to or use and enjoyment of its property. Because we hold that Westgate cannot recover for its claim in inverse condemnation, we find it unnecessary to decide the City's other points of error regarding Westgate's cross-claim. We reverse the trial court's judgment on Westgate's cross-claim in inverse condemnation, and we render judgment that Westgate take nothing on its cross-claim.

*The Requirement of Broad Form Questions*

In its seventh, eighth, and ninth points of error, the City attacks the amount of the award for the statutory condemnation, arguing that the trial court erred by submitting erroneous questions to the jury and by granting Westgate's motion for judgment notwithstanding the verdict on one of those jury questions. The City argues that the jury questions were erroneous under Tex. R.Civ.P.Ann. 277 (Supp.1990), which requires the submission of broad-form questions.

■ Over the objections of the City, the trial court submitted the two questions requested by Westgate:

*Question Number One:*

What was the FAIR MARKET VALUE of the West Tower Village Shopping Center (The Whole Property) on January 5, 1989 without any consideration of the condemnation or of the Proposed Project?

*Question Number Two:*

What was the FAIR MARKET VALUE of the remaining portion of the West Tower Village Shopping Center, exclusive of the Part Taken, immediately after the condemnation on January 5, 1989 and considering all of the uses to which the part taken will or may be put?

The jury answered the first question in the amount of $6,670,000.00 and answered $4,146,000.00 to the second. Westgate filed a motion for judgment notwithstanding the verdict with respect to the jury's answer to Question One seeking to increase the amount found. The trial court, in its judgment, granted the motion and substituted the sum of $6,880,000 for the jury's answer of $6,670,000.

Rule 277, as amended effective on January 1, 1988 requires:

> In all jury cases, the court shall, whenever feasible, submit the cause upon broad form questions.

■ Rule 277, as amended, unequivocally requires broad-form submissions "whenever feasible," that is, in any or every instance in which it is capable of being accomplished. *Texas Dep't of Human Serv. v. E.B.*, 34 Tex.Sup.Ct.J. 31, 32 (October 10, 1990). Assuming that the trial court's approach may have been correct before Rule 277 was amended, it is no longer correct. Rule 277 requires broad-form submissions in condemnation cases:

> The measure of damages in a condemnation proceeding is the difference in market value of the land immediately before and immediately after the taking.... [C]ondemnation cases should be submitted broadly in terms of the difference in value, rather than asking separate questions on pre- and post-taking values.

*Callejo v. Brazos Elec. Power Co-op.*, 755 S.W.2d 73, 76 (Tex.1988).

■ These questions were erroneous under the *Callejo* standard. Westgate argues that, even if the questions were erroneous, the City failed to preserve its point of error at trial. When landowners file objections to the commissioners' award in a condemnation proceeding, the condemnor continues to have the burden of proof that usually attaches to the plaintiff in a civil action. *Denton County v. Brammer*, 361 S.W.2d 198, 200 (Tex.1962). Where the only matter at issue, however, is the market value of the property taken and the damages, if any, to the remainder not taken, the burden of proof is on the land-

owners. *State v. Walker*, 441 S.W.2d 168, 170 (Tex.1969).

Objection is the proper method of preserving complaint as to an issue actually submitted, but claimed to be defective, regardless of whether the issue is one relied upon by the complaining party or his opponent. Tex.R.Civ.P.Ann. 274 (Supp.1990); *Vela v. Alice Specialty Co.*, 607 S.W.2d 289, 291 (Tex.Civ.App.1980, no writ). Although the City objected to questions one and two, Westgate argues that the City waived its point of error because it failed to point out specifically the matter objected to and the ground of the objection as required by Rule 274 and because this objection appears in the midst of thirteen objections. *See Davis v. Campbell*, 572 S.W.2d 660 (Tex.1978).

We disagree. Although the City lodged thirteen objections, the number of objections is not sufficient to justify the trial court's overruling all of them if the objections are not such as would actually obscure the legitimate defect involved. *Baker Material Handling Corp. v. Cummings*, 692 S.W.2d 142, 145 (Tex.App.1985), writ dism'd by agr., 713 S.W.2d 96 (Tex. 1986). The specific objection here was not obscured. The objection specifically pointed out the defect in such submissions in condemnation cases:

> Condemnor further objects to Questions 1 and 2 in that it calls for the determination of a before and after value on the property rather than a direct inquiry of damages, and constitutes a defective question—or pair of questions.

■ The City also has demonstrated that the errors in the charge were reasonably calculated to cause and probably did cause the rendition of an improper judgment. *See* Tex.R.App.P.Ann. 81 (Pamph. 1990); *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n.*, 710 S.W.2d 551, 555 (Tex.1986). Assuming that the jury's answer to broad-form submission would have been consistent with the answers it actually gave at trial, the jury would have subtracted the post-taking value ($4,146,000.00) from the pre-taking value ($6,670,000.00) and concluded that the

total damages Westgate suffered by the condemnation were $2,524,000.00. As a direct result of the errors in failing to submit broad-form questions and in granting a judgment n.o.v. in favor of Westgate, the damages payable by the City were increased by $210,000.00.[2]

The trial court erred by submitting separate questions to the jury on valuations before and after taking, rather than using a broad-form submission of the difference in value, and the City properly preserved its point of error. The City's seventh, eighth, and ninth points of order are sustained.

The judgment is reversed; a take-nothing judgment is here rendered with respect to Westgate's inverse condemnation claim. In all other respects, the cause is remanded for a new trial.

---

2. The jury's answer to question one was $6,670,-000.00. In its motion for judgment notwithstanding the verdict, Westgate urged that the judge should disregard that finding because the lowest estimate of the fair market value of the property in evidence was $6,880,000.00. On appeal, Westgate admitted that $6,880,000.00 was an error made in the process of typing its motion. It claims that the lowest estimate of the fair market value of the property in evidence was actually $6,870,000.00.