The STATE of Texas, Petitioner,

v.

Chris and Helen PETROPOULOS,
Respondents.

No. 09–0652.

Supreme Court of Texas.

Argued Feb. 1, 2011.

Decided June 10, 2011.

Rehearing Denied Sept. 30, 2011.

Susan Desmarais Bonnen, Kristina Weber Silcocks, David S. Morales, Clarence Andrew Weber, Attorney General Greg W. Abbott, Elsa Yolanda Ulloa, Austin, for Petitioner.

Sue Wall, John N. McClish, Dan W. Foster, Austin, for Respondents.

Justice JOHNSON delivered the opinion of the Court.

In this partial-taking condemnation proceeding, the landowners introduced evidence that the property's pre-taking value was over $4 per square foot and then read deposition testimony from the State's appraisal witness that the post-taking value was $2 per square foot. The landowners rested without introducing any evidence that the difference in values was caused by the condemnation. As part of the State's case, its appraisal witness opined that the whole property pre-taking was worth $2 per square foot and the remainder's value was not affected by the partial taking. The trial court directed a verdict that the post-taking value of the remainder was $2 per square foot, submitted the pre-taking value of the whole property to the jury, and calculated its judgment using the difference between the two.

We consider two primary issues. First, whether the trial court erred by only charging the jury to find the pre-taking value of the tract when there was evidence the taking did not cause damage to the remainder. Second, whether there was any evidence the remainder suffered compensable damages. We conclude that the trial court committed charge error and that there was no evidence the ·taking caused compensable damages to the remainder. We reverse the court of appeals' judgment and remand to the trial court for rendition of judgment in accordance with this opinion.

## I. Background

The State of Texas sought to acquire .33 acres out of a 3.5 acre tract fronting U.S. Highway 290 in Travis County as part of its plan to expand Highway 290 into a controlled access highway or a toll road. The State and the landowners, Chris and Helen Petropoulos, could not agree on the amount of compensation so the State initiated condemnation proceedings. *See* Tex. Prop.Code § 21.012(a). Special commissioners awarded the Petropouloses $116,080 as damages. *See id.* § 21.014. The State objected to the commissioners' award, transforming the matter from an administrative proceeding into a civil suit. *See id.* § 21.018(b); *Denton County v. Brammer*, 361 S.W.2d 198, 200 (Tex.1962).

At trial the Petropouloses' appraisal expert, Mark Smith, testified that the fair market value of the entire 3.5 acre tract pre-taking was $630,000, or $4.13 per square foot. He did not separately appraise the tract that was taken, and he specifically disclaimed any opinion about the remainder's post-taking value. Without objection by the State, the Petropouloses called the State's designated appraisal expert, Paul Hornsby, by deposition. They read Hornsby's testimony valuing the remainder property post-taking at $276,170, but they chose not to read either

his testimony that the value of the whole property per square foot was the same before and after the taking or his testimony that the partial taking did not result in damages to the remainder. The Petropouloses did not offer any evidence of the post-taking value of the remainder other than Hornsby's deposition testimony, nor did they offer any evidence that the taking caused any difference between the remainder's pre-taking value and its post-taking value.

During its case the State called Hornsby. He testified that the fair market value of the Petropouloses' entire tract pre-taking was $304,920; the part taken was not an independent economic unit and should be valued as a pro rata part of the entire tract; the part taken contained 14,375 square feet and was worth $28,750; and post-taking, the fair market value of the remainder was $276,170. These values were based on Hornsby's underlying opinion that the entire tract was worth $2 per square foot prior to the taking, the remainder was not damaged by the taking, and the remainder was worth $2 per square foot after the taking.

Because both parties presented Hornsby's valuation opinion as their only evidence of the remainder's post-taking value, the Petropouloses moved for a partial directed verdict as to that value and requested the jury be charged only on the question of fair market value of the whole property pre-taking. The court granted both requests and submitted one question to the jury:

On November 22, 2002, what was the fair market value of the Petropouloses' entire tract of land before the taking, excluding consideration of the proposed project and the pending condemnation.

The Petropouloses did not object to the charge, but the State did. The State argued that the charge did not allow the jury

to find the correct measure of damages, which was the amount of just compensation due to the Petropouloses. It argued that the proper measure of damages was either (1) the value of the part taken plus any damages the taking caused to the remainder, or (2) the difference between the value of the whole property before the taking and the value of the remainder after the taking. In addition to objecting to the charge, the State moved for a partial directed verdict on the grounds that there was no evidence the partial taking caused damages to the remainder and requested the trial court to submit either of two damages questions:

REQUESTED JURY QUESTION ■

From a preponderance of the evidence, what do you find to be the fair market value of the property being acquired, the .33 acres (14,375 square feet), considered as severed land, as of the date of taking, November 22, 2002?

REQUESTED JURY QUESTION ■

From a preponderance of the evidence, what do you find to be the damages, if any, to [the Petropouloses]'s property, including improvements thereon, as a result of the acquisition of the 0.33 acres (14,375 square feet) of land as of the date of taking, November 22, 2002?

The trial court denied the State's motion for partial directed verdict, refused to submit the requested jury questions, and overruled the State's objections to the charge.

The jury found the pre-taking value of the property was $579,348. The trial court then calculated the Petropouloses' damages by subtracting the amount that Hornsby testified was the value of the remainder—$276,170—from $579,348. The court rendered judgment for the Petropouloses in the amount of $303,178 less credit for the amount of the commissioners' award, which the State had deposited

into the trial court registry and the Petropouloses had withdrawn. The State appealed.

The court of appeals affirmed. 346 S.W.3d 619. It held that the trial court did not commit charge error and the evidence was sufficient to support the damages awarded. *Id.* at 628. We granted the State's petition for review. 54 Tex.Sup. Ct.J. 329 (Dec. 17, 2010).

The State presents seven issues that focus on three main points: (1) the Petropouloses' appraisal expert was improperly allowed to testify to the pre-taking value of the whole property; (2) the trial court's charge was erroneous and the damages should have been submitted by broad form questions; and (3) there was no evidence the partial taking resulted in damages to the remainder. The State urges that we should reverse the judgment of the court of appeals and either render judgment for the value of the .33 acres taken or grant a new trial. In response, the Petropouloses maintain that because the pre-taking value of the whole property was the only disputed issue, the trial court was correct in submitting only that question to the jury.

We disagree with the State in part but also agree in part. We disagree that the trial court erred by admitting testimony from the Petropouloses' appraisal expert, but we agree that (1) the court committed charge error and (2) there was no evidence the taking caused remainder damages. We address these issues in turn, beginning with the State's assertion that the trial court abused its discretion by admitting Smith's testimony.

## II. Analysis

### A. The Petropouloses' Appraisal Expert

■ The State first argues that Smith's testimony was irrelevant because he only testified to the pre-taking value of the whole property and the proper method of

determining damages required evidence of both the value of the part taken and the damage to the remainder. However, the State does not dispute that at least part of an acceptable method of calculating partial-taking damages requires determining the market value of the entire tract before the taking. *See Westgate, Ltd. v. State,* 843 S.W.2d 448, 457 (Tex.1992). It follows that Smith's testimony as to the property's pre-taking value was relevant, and the trial court did not abuse its discretion in admitting the testimony. *See* Tex.R. Evid. 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 558 (Tex.1995).

▪ The State also challenges the reliability of Smith's opinion. The State argues there was no evidence Smith's appraisal technique was generally accepted. We disagree. Smith used "the comparable sales approach" to determine the pre-taking value of the whole. We have recognized that this is a traditional method for determining land value. *City of Harlingen v. Estate of Sharboneau,* 48 S.W.3d 177, 182 (Tex.2001).

▪ Finally, the State argues that because Smith based his value on the specific use of a car wash and lube facility instead of considering all reasonable uses, his testimony was unreliable under *City of Austin v. Cannizzo,* 153 Tex. 324, 267 S.W.2d

808, 815 (1954), which states that it is proper to admit evidence of "the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future." According to the State, Smith's testimony was speculative because the Petropouloses had not been approached by buyers seeking to acquire the land for a car wash and lube facility. But in his testimony, Smith described the practice in the appraisal profession of conducting a feasibility analysis to determine an appropriate highest and best use. He also testified that he adhered to that practice and considered four factors: what is legally permissible; what is physically possible; what is financially feasible; and what is the most productive use of the property. These are the same factors upon which Hornsby, the State's expert, based his highest and best use testimony. Smith then discussed his analysis—including assessing properties comparable to the Petropouloses' property—and determined a value estimate for the property under its various possible uses. As a result of his feasibility analysis, Smith determined the fair market value of the Petropouloses' property based on what he considered its highest and best use.

▪ A trial court has broad discretion to determine the admissibility of expert testimony. *See, e.g., Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 499 (Tex.2001). Under the record before us, we conclude that the trial court did not abuse its discretion in admitting Smith's testimony.[1]

---

1. The State also contends that the trial court abused its discretion because the Petropouloses did not offer evidence to support the relevancy and reliability of Smith's testimony at the pretrial hearing on the State's motion to exclude. But it is within a trial court's discretion whether to even conduct a pretrial evidentiary hearing when an expert's testimony has been challenged. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152–53, 119

S.Ct. 1167, 143 L.Ed.2d 238 (1999); *see also Regan v. Schlumberger Tech. Corp.,* No. 01–00–00026–CV, 2001 WL 1344077, at *2 (Tex. App.-Hous. [1st Dist.] 2001, pet. denied) (not designated for publication). And in making a preliminary determination on the admissibility of the expert's testimony at such a hearing, the trial court is "not bound by the rules of evidence except those with respect to privi-

## B. The Jury Charge

In *Westgate* we reaffirmed the longstanding rule that the measure of compensation in a partial-takings case is "the market value of the part taken plus damage to the remainder caused by the condemnation." 843 S.W.2d at 456.[2] We outlined two acceptable methods for calculating damages in a partial takings case. The first method measures damages by the fair market value of the part taken plus damages to the remainder caused by the condemnation. *Id.* (citing *Buffalo Bayou, Brazos & Colo. Ry. Co. v. Ferris,* 26 Tex. 588, 603–04 (1863)). The second method measures damages by the difference between the market value of the entire tract before the taking and the market value of the remainder after the taking. *See id.* (citing *Uselton v. State,* 499 S.W.2d 92 (Tex.1973)). The second method is preferable when the part taken does not constitute a separate economic unit, such as when the tract taken is small or irregularly shaped. *Id.* at 456–57.

We have previously addressed how partial-takings cases should be submitted following the amendment of Texas Rule of Civil Procedure 277 to mandate use of broad form jury questions whenever feasible. In *Callejo v. Brazos Elec. Power Coop., Inc.,* 755 S.W.2d 73 (Tex.1988), the trial court charged the jury to separately find the pre- and post-taking values of the land. *Id.* at 74. The trial court then disregarded the finding on post-taking value and rendered judgment based on the finding of pre-taking value and the condemning authority's expert's opinion of the post-taking value. *Id.* We agreed that

there was no evidence to support the finding of the jury as to post-taking value and affirmed the judgment. *Id.* at 75–76. We noted, however, that the case was tried before Rule 277 was amended. *Id.* at 76. We specifically stated that pursuant to amended Rule 277, future condemnation cases should be submitted "broadly in terms of the difference in value, rather than asking separate questions on pre- and post-taking values." *Id.*

In *Westgate,* the jury was charged to find the pre- and post-taking values of the tract, rather than being broadly charged to find the difference between the two. 843 S.W.2d at 451. The court of appeals held that the trial court erred by not submitting a broad-form charge to the jury as mandated by Rule 277 and *Callejo. State v. Westgate,* 798 S.W.2d 903, 907–08 (Tex.App.-Austin 1990), *aff'd,* 843 S.W.2d 448 (Tex.1992). In affirming, we specifically stated that the court of appeals properly disposed of the charge issue. *Westgate,* 843 S.W.2d at 456. We also generally discussed the manner in which partial condemnation damages should be submitted to the jury. *Id.* As relevant to the method used by the trial court here, we noted that the broad-form submission should be "the damages to the landowner's property, accompanied by an instruction that such damages should be determined by considering the difference between a) the value of the landowner's entire tract before the taking, and b) the market value of the remainder after the taking, giving consideration to the uses to which the condemned part is to

---

leges." *See* Tex.R. Evid. 104(a); *see also Glenn v. C & G Elec., Inc.,* 977 S.W.2d 686, 688 (Tex.App.-Fort Worth 1998, pet. denied). Thus, because the trial court was not required to hold a pretrial hearing to begin with, and the rules of evidence did not apply to the hearing when it was conducted, the trial court did not abuse its discretion by refusing

to exclude Smith's testimony on the basis urged by the State.

**2.** The landowner is entitled to recover at least the fair market value of the property taken even if the taking causes the remainder's value to increase. *Westgate,* 843 S.W.2d at 456.

be subjected." *Id.* at 457. But our discussion was predicated on the overarching premise that in partial-takings cases the landowner's just compensation is an amount determined by the value of the property taken plus damage to the remainder *caused* by the condemnation. *Id.* at 456. As the Petropouloses note, we addressed a jury question submitted by the trial court in *Uselton:*

> The trial court in *Uselton* also asked the following additional question:
>
>> Do you find from a preponderance of the evidence that the market value of the remainder of the defendants' tract of land not taken was decreased in market value as a result of the condemnation by the plaintiffs, giving consideration to the uses to which the part taken is to be subjected? Answer "yes" or "no." [Answer: Yes]
>
> We have never required this type of threshold question inquiring whether the landowner suffered damages to the remainder, and such a question is not necessary.

*Id.* at 464 n. 7. Although we stated that the threshold question submitted in *Uselton,* which contained a causation element, is not necessary, the causation element was not the focus of our statement. And to the extent our statement could be read to imply that a showing of causation between the taking and damages to the remainder is not required, we clarify it today. When there is a question about whether the partial taking caused damages to the remainder the parties are entitled to have the jury decide the issue. In this case, the trial court opted to determine damages according to the second method we discussed in *Westgate* by subtracting the post-taking

value of the remainder from the pre-taking value of the whole tract. *See Westgate,* 843 S.W.2d at 457. But that methodology effectively removed an essential part of the damages question from the jury's consideration: whether the partial taking caused the remainder's value to change. Where the parties disagree about the value of the part taken as well as whether the partial taking *caused* the remainder's post-taking value to differ from its pre-taking value, the trial court should charge the jury using broad-form questions and incorporate the causation issue.

In this case the State properly and timely objected to the jury charge. The State went further and also requested questions that would have allowed the jury to find the Petropouloses' damages according to the manner we outlined in *Westgate.* The State's requested jury question 1 effectively submitted damages according to the first method we discussed because, as we determine below, there was no evidence the taking caused any compensable damages to the remainder. The State's requested jury question 2 conformed to the second method we discussed in *Westgate.* It would have required the jury to determine the amount of damages *resulting from* the taking.[3] We conclude that the trial court committed charge error by submitting only the pre-taking value of the property to the jury.

We next address the State's argument that even if the jury had been properly charged, there was no evidence the taking caused compensable remainder damages and that we should render judgment instead of remanding the cause for a new trial.

---

**3.** We recognize that the jury question might have made it difficult for the State to prosecute an appeal challenging the sufficiency of the evidence as to damages. *See Harris County v. Smith,* 96 S.W.3d 230, 233 (Tex.2002).

Whether the State could have, under this record, validly objected to the jury being charged with such a question had the Petropouloses requested it is an issue not presented, and we offer no opinion on it.

## C. Remainder Damages

As support for its conclusion that there was some evidence of damage to the remainder, the court of appeals referenced Smith's testimony that conversion of Highway 290 to a toll road would reduce the financial feasibility of some types of development on the remainder. *See Petropoulos,* 346 S.W.3d 619. But Smith only testified that the taking would affect the soundness of a business decision to build a car wash and lube facility on the property post-taking. Specifically, he stated that it would be physically and legally possible to build a car wash and lube facility on the tract both before and after the taking, but "impulse retail" on a mid-block location on a toll road was less financially feasible because:

> [an upgraded corner site] increases the exposure and accessibility of getting in and out of that site, it, enhances the ability to see the property, and it increases—you know, the visibility of it to where customers can actually see what's there and what business they may frequent.

We have previously held that altered exposure to traffic and altered accessibility to a roadway are not compensable damages. *State v. Schmidt,* 867 S.W.2d 769, 777 (Tex.1993) (holding that a landowner could be compensated if access to their property is completely denied, but not for "loss of value due to diversion of traffic or circuity of travel"). Further, in *State v. Dawmar Partners, Ltd.,* we recently considered damages for a partial taking as part of a highway improvement project. 267 S.W.3d 875, 877 (Tex.2008) (per curiam). In *Dawmar Partners* the principal issue was whether the landowners were entitled to remainder damages caused by permanent denial of direct access to the highway if the restrictions on access changed the highest and best use of the property from commercial to residential.

*Id.* We held that the landowners were not entitled to compensation for diminished value of the remainder because they had not suffered a material and substantial impairment of access, regardless of the fact that the highest and best use had drastically changed because of loss of direct access to the highway. *Id.* at 878.

Here, the Petropouloses did not offer any evidence that the taking caused a material and substantial impairment of access to their property. Although Smith testified that the Property would have less exposure to traffic after conversion of the highway to a toll road, the Petropouloses' remainder property would still have frontage on and direct access to the highway. There was no evidence that any other access to the property would be affected by the highway conversion. Evidence that conversion of U.S. 290 to a toll road would alter the nature of the property's highest and best use is not, without more, evidence of compensable damages for a partial condemnation and taking. *See id.; Schmidt,* 867 S.W.2d at 777. Nor is diminished traffic and diminished exposure to traffic. *See Schmidt,* 867 S.W.2d at 773–74; *Archenhold Auto. Supply Co. v. City of Waco,* 396 S.W.2d 111, 114 (Tex.1965); *see also State v. Heal,* 917 S.W.2d 6, 11 (Tex. 1996) (holding that absent a material and substantial impairment of access, the landowners were not entitled to compensation "even if the remainder of their property has lost some degree of value").

Moreover, Hornsby testified that the taking did not cause any change in the value of the remainder property, and Smith expressly limited his valuation opinion to only the pre-taking value of the whole property. The parties agreed that the tract's allowable impervious cover area—the area on which buildings, parking lots, etc. could be constructed—was increased by the taking.

We conclude that there was no evidence of compensable remainder damages.

### D. Disposition

Even though there is no evidence of compensable damages to the Petropouloses' remainder property, they are still entitled to compensation for the value of the property taken. *Westgate,* 843 S.W.2d at 456. The State argues that because there was no evidence of remainder damages, judgment should be rendered for the value of the acreage taken. In the alternative, the State seeks remand for a new trial.

Regarding the State's rendition argument, there was evidence from Hornsby that the property was worth $2 per square foot pre-taking. Smith's opinion was that the whole tract was worth $4.13 per square foot pre-taking. Smith did not appraise the part taken as a separate tract and had no opinion about whether it should be valued as a separate tract or a pro rata part of the whole 3.5 acres. Hornsby, however, testified that because of the configuration of the strip taken and its location, the .33 acres tract did not have value as a separate economic unit and should be valued as a pro rata part of the 3.5 acres.

The jury found that the pre-taking value was $579,348, which is $3.80 per square foot, and the value of the tract taken can be calculated based on that determination because the evidence was undisputed that the .33 acres taken contained 14,375 square feet. Further, Hornsby's opinion was that the tract should be valued as a pro rata share of the entire tract and there is no evidence that it should be valued otherwise. Based on the jury finding and the undisputed evidence, then, the Petropouloses are entitled to damages of $3.80 per square foot for 14,375 square feet—a total of $54,625.

Neither party contested the part of the trial court's judgment allowing the State credit for the amount of the commission-ers' award that it deposited and the Petropolouses withdrew. Accordingly, the State is entitled to credit for that amount.

### III. Conclusion

The trial court erred by charging the jury as it did. Further, there was no evidence the partial taking caused damages to the remainder property, and based on the jury findings the value of the tract taken can be determined. Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for rendition of judgment in accordance with this opinion.