02-11-267-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00267-CV

 

 


 
 
 State of Texas and Tarrant County, Texas
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 LeDrec, Inc.
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

 

FROM County
Court at Law No. 3 OF Tarrant COUNTY

----------

 

OPINION

----------

          This
is an agreed interlocutory appeal from the trial court’s denial of the State of
Texas’s and Tarrant County, Texas’s motion for partial summary judgment
challenging Ledrec, Inc.’s expert’s formulation of damages in this condemnation
case.  See Act of May 27, 2005, 79th Leg., R.S., ch. 1051, §§ 1–2, 2005
Tex. Gen. Laws 3512, 3512–13 (former Tex. Civ. Prac. & Rem. Code Ann. §
51.014(d)).[1]  In one issue, appellants
contend that the trial court erred by determining that the expert’s testimony on
the measure of damages is admissible even though its basis is “remote,
speculative, and conjectural.”  We affirm.

Background

          Ledrec
owns property adjacent to F.M. 1187 in Tarrant County, which is located in the
extraterritorial jurisdiction (ETJ) of the City of Mansfield.  To widen F.M.
1187, appellants needed to condemn a ten-foot strip of land from the part of
Ledrec’s property that abuts the highway.  After appellants filed a petition
seeking condemnation, the special commissioners appointed by the trial court awarded
Ledrec $65,000:  $11,180 for the ten-foot strip of property taken and $53,820 for
damage to the remainder of Ledrec’s property caused by the taking.  Ledrec
objected to the special commissioners award, so the State’s petition for
condemnation is still pending in the county court at law.  See Tex.
Prop. Code Ann. § 21.018(b) (West 2004).

          The
parties have agreed on the damage award applicable to the ten-foot strip of
land to be taken; the sole dispute left in the trial court is an appropriate
damage award for the remainder of the property because of the taking. 
Appellants’ expert, Nicole Schechter, testified in her deposition that the
remainder property was damaged in the amount of $58,740 based on the lower
overall rental rate that the front two buildings on the property will be able
to garner because they will be closer to the highway after the taking and will
lose parking.  Ledrec’s expert, James Maibach, opined that the damage to the
remainder property is $248,000––the loss of the entire income-producing value
of the front two buildings.  His opinion is based on the premise that the front
two buildings will be “functionally obsolete” after the taking and that no
willing buyer would attribute any value whatsoever to those two buildings as of
the date of taking.

According
to Maibach, because the front two buildings would be only twenty feet from the
road after the taking, the property would not be compliant with most of the
zoning classifications Mansfield would likely impose on the property, all of which
require minimum setback lines of thirty feet from the road.  Although this
thirty-foot setback would not apply to the property while it was only in the
ETJ (unless Ledrec were to replat the property), once Mansfield annexed the
property, the front two buildings would be nonconforming under Mansfield’s
zoning ordinance.[2]  Appellants presented
evidence that Mansfield has no current plans to annex the property, but Maibach
testified that because the property is within Mansfield’s ETJ, annexation is
inevitable.

          In
their motion for summary judgment, appellants allege that Maibach’s testimony
is inadmissible as a matter of law because it is remote, speculative, and based
on conjecture in that it is based on the mere possibility that the buildings
will become functionally obsolete and no longer generate income as of the day
of the taking even though Mansfield has not yet annexed the property and there is
no evidence as to when Mansfield will annex it.  Ledrec filed a cross-motion
for summary judgment, contending that Maibach’s testimony is admissible and
that the effect of a future annexation of the property can be taken into
account in determining the proper measure of damages.  The trial court denied appellants’
motion and granted Ledrec’s.

Standard
of Review

          In
a summary judgment case, the issue on appeal is whether the movant met the
summary judgment burden by establishing that no genuine issue of material fact
exists and that the movant is entitled to judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,
289 S.W.3d 844, 848 (Tex. 2009).  We review a summary judgment de novo.  Travelers
Ins. Co. v. Joachim, 315 S.W.3d 860, 862 (Tex. 2010).

          We
take as true all evidence favorable to the nonmovant, and we indulge every
reasonable inference and resolve any doubts in the nonmovant’s favor.  20801,
Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008); Provident Life &
Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  We consider
the evidence presented in the light most favorable to the nonmovant, crediting
evidence favorable to the nonmovant if reasonable jurors could and disregarding
evidence contrary to the nonmovant unless reasonable jurors could not.  Mann
Frankfort, 289 S.W.3d at 848.  We must consider whether reasonable and
fair-minded jurors could differ in their conclusions in light of all of the
evidence presented.  See Wal-Mart Stores, Inc. v. Spates, 186 S.W.3d
566, 568 (Tex. 2006); City of Keller v. Wilson, 168 S.W.3d 802, 822–24
(Tex. 2005).

          When
both parties move for summary judgment and the trial court grants one motion
and denies the other, the reviewing court should review both parties’ summary
judgment evidence and determine all questions presented.  Mann Frankfort,
289 S.W.3d at 848; see Myrad Props., Inc. v. Lasalle Bank Nat’l Ass’n,
300 S.W.3d 746, 753 (Tex. 2009).  The reviewing court should render the
judgment that the trial court should have rendered.  Mann Frankfort, 289
S.W.3d at 848.

Propriety
of Interlocutory Appeal

          Former
section 51.014(d) of the civil practice and remedies code provided that

          (d) A
district court, county court at law, or county court may issue a written order
for interlocutory appeal in a civil action not otherwise appealable under this
section if:

 

          (1) the
parties agree that the order involves a controlling question of law as to which
there is a substantial ground for difference of opinion;

 

          (2) an
immediate appeal from the order may materially advance the ultimate termination
of the litigation; and

 

          (3) the
parties agree to the order.

Act
of May 27, 2005, 79th Leg., R.S., ch. 1051, §§ 1–2, 2005 Tex. Gen. Laws 3512,
3512–13.  Here, the trial court’s order states that the controlling issue of
law is as follows:

Within the confines
of well-settled Texas law that the measure of damages to remainder property is
the difference in market value immediately before the taking and immediately
after the taking, and even though the Defendant’s property in question had not
been annexed by the City of Mansfield on the date of taking –– Is the
testimony (and written report) of Defendant’s valuation expert regarding the
“after-taking” market value of the remainder property based upon the following
factors admissible?

(1) The remainder property is in the ETJ
of the City of Mansfield;

 

(2) The remainder property will be annexed
by the City of Mansfield;

 

(3) Prior to the condemnation, the subject
property complied with the City of Mansfield’s platting and zoning requirements
including specifically its parking requirements and its building set back
requirements;

 

(4) Upon annexation, the remainder
property will be “non-conforming” (i.e., it will not comply with certain
platting, zoning, and building requirements of the City of Mansfield)[;] and

 

(5) After annexation, numerous scenarios
could arise which would give the City of Mansfield the right to require the
landowner/condemnee (or its successor) to conform the remainder property to the
City of Mansfield’s zoning, platting, and building requirements – all of which
would have a significant detrimental impact on the landowner/condemnee (or its
successor) (i.e., the cost, expense, and/or loss caused by conformance,
including demolition, in whole or in part, of Building Nos. 1 and 2).

[Emphasis
added.]

          Although
the issue is framed in terms of admissibility of the expert’s testimony, which
is normally reviewed under an abuse of discretion standard, the competing
summary judgment motions address the propriety of Maibach’s testimony regarding
the proper measure of damages in this case.  See State v. Petropoulos,
346 S.W.3d 525, 529 (Tex. 2011).  The proper measure of damages is a question
of law.  See Interstate Northborough P’ship v. State, 66 S.W.3d 213, 220
(Tex. 2001); Coble v. City of Mansfield, 134 S.W.3d 449, 454 (Tex.
App.––Fort Worth 2004, no pet.).  Thus, the issue is an appropriate matter for
summary judgment and may be addressed in an agreed interlocutory appeal if it
is controlling and there is a substantial ground for a difference of opinion.[3] 
Coble, 134 S.W.3d at 454; see Act of May 27, 2005, 79th Leg.,
R.S., ch. 1051, §§ 1–2, 2005 Tex. Gen. Laws 3512, 3512–13; Gulley v. State
Farm Lloyds, 350 S.W.3d 204, 207–08 (Tex. App.––San Antonio 2011, no pet.)
(relying on legislative history indicating appeals under section 51.014(d) are
proper when trial court rules on pivotal issue in case about which there is
legitimate disagreement and citing cases in which interlocutory appeal under
section 51.014(d) was deemed proper).

Here,
whether Maibach’s expert opinion that a willing buyer would not assign any
future income value to the front two buildings on the property (because of the
threat of future annexation and resulting nonconforming use) utilizes a proper
measure of damages is a controlling question of law––as presented in the
parties’ competing summary judgment motions––because the damages to be assessed
for the effect of the taking on the remainder property is the sole issue left
in the case.  Thus, we will review the parties’ agreed issue.

Applicable Law

          In
the recent case of State v. Petropoulos, the Texas Supreme Court
explained,

In
Westgate we reaffirmed the longstanding rule that the measure of
compensation in a partial-takings case is “the market value of the part taken
plus damage to the remainder caused by the condemnation.”  843 S.W.2d at 456. 
We outlined two acceptable methods for calculating damages in a partial takings
case.  The first method measures damages by the fair market value of the part
taken plus damages to the remainder caused by the condemnation.  Id.
(citing Buffalo Bayou, Brazos & Colo. Ry. Co. v. Ferris, 26 Tex.
588, 603–04 (1863)).  The second method measures damages by the difference
between the market value of the entire tract before the taking and the market
value of the remainder after the taking.  See id.  (citing Uselton v.
State, 499 S.W.2d 92 (Tex. 1973)).  The second method is preferable when
the part taken does not constitute a separate economic unit, such as when the
tract taken is small or irregularly shaped.  Id. at 456–57.

346
S.W.3d at 530 (footnote omitted).  Market value is “the price the property will
bring when offered for sale by one who desires to sell, but is not obliged to
sell, and is bought by one who desires to buy, but is under no necessity of
buying.”  City of Harlingen v. Estate of Sharboneau, 48 S.W.3d 177, 182
(Tex. 2001) (quoting State v. Carpenter, 89 S.W.2d 979, 979 (Tex. 1936)).

Here,
Maibach testified that the market value of the entire property before taking
was $598,000 and that after the taking, the market value of the remainder was
$350,000; thus, he employed the second Westgate method for valuing the
damage to the remainder at $248,000.  In calculating the market value of the
remainder after taking, he used two of three traditional methods of determining
market value:  the comparable sales method and the income method.  Under the
income method,[4] he determined that as of
the date of taking a buyer would not attribute any value to the two buildings
because they would be unleasable, and he opined that the resulting lost income
from the two buildings would be $248,000.  City of Harlingen, 48 S.W.3d at
183 (“The income approach to value is appropriate when property would, in the
open market, be priced according to the income that it already generates.”).

Maibach
determined the property’s lost income attributable to the front two buildings by
using a capitalization rate of eight and half percent.  Thus, he determined
that if the taking had not occurred, the two buildings would be valued at
$39.97 per square foot or $248,000 based on an eight and a half percent rate of
return.  His testimony that an investor would place no value on those buildings
as of the date of taking is based on the assumption, then, that an investor
would consider those buildings wholly incapable of producing income as of that
date because of the potential of annexation, no matter when it occurred.

Analysis

The
question of law in this case is not whether an expert may consider the effect
of the possibility, or even inevitability, of annexation on remainder property when
calculating damages to remainder property; an expert should be able to do so.  See,
e.g., City of Abilene v. Blackburn, 447 S.W.2d 474, 475–76 (Tex.
Civ. App.––Eastland 1969, writ ref’d n.r.e.) (holding that trial court properly
allowed testimony about effect on market value of possibility of future
annexation of property because, if annexed, the property would be subject to
aerial easements and zoning restrictions upon completion of airport expansion). 
The question is whether an expert can testify to a damage amount that is based
on the expert’s opinion that remainder property loses some or all of its income
producing potential, and thus market value, as of the date of taking due to the
mere potential of future annexation.

In Petropoulos, the supreme court determined
that the property owner’s expert’s testimony about damages to the remainder
property was no evidence of damages because decreased visibility and altered
accessibility to remainder property are not compensable damages to remainder
property.  Id. at 532–33.  And in the older case of Texas Electric
Service Co. v. Campbell, the supreme court held that several witnesses’
testimony that the possibility of growth of the town of Kermit closer to the
remainder property would impact the usage of remainder property was no evidence
of damages to the remainder.  336 S.W.2d 742, 744–45 (Tex. 1960) (“We regard
all of this evidence based on possibilities rather than reasonable
probabilities, . . . and on speculation, as incompetent.  It constitutes no
evidence to aid the jury in the performance of its fact finding function.”).

          In
Coble v. City of Mansfield, this court held that Mansfield was entitled
to a partial summary judgment precluding the property owner from offering
evidence that he would have to build a screening wall on part of his remainder
property if he developed it as a residential subdivision because the summary
judgment evidence showed, among other things, that the owner did not intend to
develop the remainder as a residential subdivision and had applied for a zoning
change to commercial.  134 S.W.3d at 455–58.  Thus, the expert’s testimony
regarding the damages incurred by the necessity of building a screening wall was
“based on speculation and conjecture,” and the property owner was precluded
from recovering such damages as a matter of law.  Id. at 451, 457.

          However,
Maibach’s testimony here is that, based on his over twenty years of experience
as an appraiser, a willing buyer would presume that the front two buildings
would not generate any income as of the date of taking (regardless of whether they
were at that time actually producing income)––because of the possibility that
an annexation would force a change in use of the buildings––and would therefore
assign no value to those buildings in a purchase.[5] 
Thus, Maibach’s testimony is not based on a speculative or remote possibility––the
property’s market value at the time of a future annexation––but rather, it is
based on an assessment of the current value a willing buyer and seller would
place on the remainder property as of the date of taking because of the
perception that annexation could limit the property’s use.[6] 
See Blackburn, 447 S.W.2d at 475–76.  Whether this opinion is correct is
not for this court to resolve; whether it is based on a proper measure of
damages is.  See, e.g., Kerr-McGee Corp. v. Helton, 133 S.W.3d
245, 254 (Tex. 2004) (“In reviewing the reliability of expert testimony, the
court is not to determine whether the expert’s conclusions are correct; rather,
the court should determine only whether the analysis used to reach those
conclusions is reliable.”), abrogated in part on other grounds by Coastal
Oil & Gas Corp. v. Garza Energy Trust, 268 S.W.3d 1, 18–19 (Tex. 2008). 
We conclude and hold that the trial court did not err by granting Ledrec’s
motion for summary judgment and denying appellants’ because––regardless of the
correctness of Maibach’s opinion––it is based upon a proper measure of damages
for the remainder property.  See, e.g., Petropoulos, 346 S.W.3d
at 530.

          We
overrule appellant’s issue and affirm the trial court’s interlocutory order.

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; WALKER and MCCOY, JJ.

 

DELIVERED:  April 12, 2012









[1]This former version of
section 51.014(d) is still in effect as to cases filed in the trial court
before September 1, 2011.  Act of May 25, 2011, 82nd Leg., R.S., ch. 203, §
6.01, 2011 Tex. Gen. Laws 758, 761.





[2]Maibach testified that
because of the resulting future nonconforming use and loss of parking to the
front two buildings, the best use of the property would be to tear down the
front two buildings and use that space for parking for the remainder property.





[3]To the extent that
appellants are challenging the reliability of Maibach’s testimony because it is
based on speculation and conjecture, and therefore no evidence, it would still
be an appropriate matter for summary judgment.  See, e.g., Plunkett
v. Conn. Gen. Life Ins. Co., 285 S.W.3d 106, 112–13 (Tex. App.––Dallas
2009, pet. denied).





[4]The income method of
appraising property involves estimating the future income of the property and
applying a capitalization rate to that income to determine market value.  Polk
County v. Tenneco, Inc., 554 S.W.2d 918, 921 (Tex. 1977).  The
capitalization rate may be defined as the rate of interest investors would
require as a return on their money before they would invest in the
income-producing property, taking into account all the risks involved in that
particular enterprise.  Id.  The income approach thus involves an
estimate of two variables, future income and the capitalization rate, which are
used to find the market value figure.  Id.





[5]Maibach testified that he
looked at the value of the remainder from both the buyer’s and seller’s
perspectives and that the “market value” of the remainder property as of the
date of taking was $350,000.





[6]The difference is subtle;
although Maibach’s report attached as summary judgment evidence states that the
taking would actually render the front two buildings functionally obsolete and
unleasable as of the date of taking––as opposed to stating that a willing buyer
and seller would presume that the buildings would become functionally
obsolete and unleasable as of the date of taking––his deposition testimony,
construed in Ledrec’s favor, is that he considered both a buyer’s and seller’s
positions in making his determination of market value.