In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00290-CV**

_____


**IN RE J. ADAMS, LLC**


**Original Proceeding**
**County Court at Law No. 1 of Jefferson County, Texas**
**Trial Cause No. 125,421**


**MEMORANDUM OPINION**

In this mandamus proceeding, J. Adams, LLC (Adams) contends the trial court abused its discretion by granting Jefferson County's (the County) motion for new trial after Adams refused to accept a remittitur in a condemnation case. In its order granting the new trial, the trial court found that the jury's award to Adams of "the difference between the market value of Plaintiff's whole property before the taking and the market value of Plaintiff's remaining property after the taking and cost[] to cure damages as presented by the evidence separately and additionally permits a double recovery which is not permitted under Texas law." According to

1

Adams, "[b]ecause [Adams's expert's] estimated cost to cure mitigated damages distinct from the decrease in market value of the remaining property that resulted from the County's taking, the inclusion of these damages did not constitute a double recovery." Adams argues that factually sufficient evidence supports the jury's verdict, and that a trial court cannot grant a new trial conditioned on a party's refusal to accept a remittitur if factually-sufficient evidence supported the jury's verdict. *See In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 210 (Tex. 2009) (orig. proceeding) (citing *Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641 (Tex. 1987). We deny the petition for a writ of mandamus.

Underlying Facts

In September of 2010, the County filed Plaintiff's Statement and Petition of Condemnation against Adams to acquire property in Jefferson County with existing road frontage on Frint Road. As part of a project to expand or improve LaBelle Road, the County condemned three parcels totaling 4.21 acres out of Adams's 69 acre tract. The only issue at trial pertained to damages. In estimating the market value of the property, Adams's expert, Wayne Baer, reasoned that the land was comprised of two separate economic units: (1) approximately eight acres of frontage along Frint Road containing the original location of a sandblasting and painting facility and (2) approximately sixty-one acres with frontage along Chance

Drive where Adams decided to relocate a new sandblasting and painting facility. The separate economic units were depicted by Adams's real estate appraiser as follows:



The County condemned three parcels--parcel 28A, 28B, and 28C--totaling 4.21 acres out of the 69-acre parent tract owned by Adams. Parcels 28B and 28C are located within the 8 acres and parcel 28A crosses the 61.005 acres. Adams's expert depicted the parcels as follows:



The primary dispute between the parties at the trial pertained to the calculation and amount of the alleged damage to the remainder of the property after the partial taking.

Adams's principal owner, Judd Adams, testified at trial that operating the sandblasting and painting facility at its original location on the 69-acre tract could result in overspray claims from individuals travelling along the proposed alignment of the road on Parcel 28A. Concluding that the taking rendered the original paint and sandblasting facility unusable for its original use, Adams built a new sandblasting and painting facility elsewhere on the remainder of the 69-acre tract at

a cost of approximately $180,000. Judd Adams also testified that after the County filed the condemnation suit, Adams sold the former sandblasting and painting facility and approximately six to eight acres[1] of land adjacent thereto to a pipe fabricator for $150,000.

Adams's real estate appraiser, Wayne Baer, testified that the sandblasting and painting facility contributed $351,433 in value to the property before the taking, and after the taking, the contributory value of the improvements is $175,716. According to Baer, the fifty percent diminution in contributory value was in addition to the cost to cure that Adams incurred by relocating the improvements, which Baer estimated to be $199,868. Baer testified that unless his calculation included cost to cure as a component of damages, the value of the remaining improvements would be diminished even more. According to Baer, without relocating the facility, in his opinion the original sandblasting site would have no value or negative value because the improvements would have to be removed to restore the property to a different highest and best use. In addition to damages of $80,248 for the part taken, Baer testified that Adams was also entitled to $175,716 for the damage to the remainder and $199,868 for the cost to cure. The total damage amount due, according to Baer, is $455,832.

---

[1] The testimony in the record appears to reference six, eight, and ten acres being sold by Adams along with the old sandblasting and painting facility.

The County's real estate appraiser, Stephen Duplantis, testified at trial that he estimated the total compensation at $88,500. According to the record, prior to trial the County hired another real estate appraiser, Jimmy Bishop, to perform a real estate appraisal and provide a report. Bishop prepared two reports and an addendum, but Bishop was not available to testify at trial. The County engaged Duplantis to review the other appraisals and to testify at trial. Both Baer and Duplantis referenced Bishop's report and addendum in their testimony to the jury.

Bishop's addendum provides his estimate of the just compensation due to Adams as $125,000 for Parcel 28-A, $72,000 for Parcel 28-B, and $3,885 for Parcel 28-C, for a total compensation of $201,000. Duplantis agreed with part of Bishop's appraisal and disagreed with other parts of Bishop's appraisal. Duplantis testified that the just compensation for the three parcels should be $88,500.

The jury was asked one question:

Jury Question No. 1
By a preponderance of the evidence, what do you find to be the difference between the market value of Plaintiff's whole property before the County's taking on December 20, 2010, and the market value of Plaintiff's remaining property after the taking, giving consideration to the uses to which the condemned parts are to be subjected?

The jury was instructed that it could "consider necessary modifications to the remaining property resulting from the condemnation, if any, in determining the

6

market value of the remaining property after the taking." The jury returned a verdict in the amount of $455,832.

After the verdict, the County filed a motion to disregard the jury's finding, arguing that Adams could not recover cost to cure as a separate item of damage and that the jury's award to Adams of both the diminution in market value and the cost to cure constituted a double recovery. The County requested a remittitur in the amount of $199,868 and entry of judgment in the amount of $255,964. On May 19, 2016, the trial court entered judgment on the jury's verdict. However, the trial court simultaneously entered a Suggestion of Remittitur or Alternatively New Trial, concluding that allowing Adams to recover the difference in the market value of its property before and after the taking, including cost-to-cure damages, "permits a double recovery which is not permitted." Under the trial court's suggestion of remittitur, Adams was required to accept the remittitur or be subjected to a new trial. Adams did not accept the suggestion of remittitur. The County then filed a motion for new trial on several grounds. On June 8, 2016, the trial court set aside its May 19, 2016 judgment on the verdict and ordered a new trial based on the grounds suggested in the County's motion for new trial. Adams then filed a Petition for Writ of Mandamus with this Court.

In ordering a new trial, the trial court found that "under the circumstances of the case," the "cost[] to cure damages" amounted to an improper recovery, resulting in "an erroneous measure of damage in excess of [the expert's] determination of the loss of value to the remainder resulting from the taking." The trial court also concluded that "[b]oth the double recovery and the errors in allowing consideration by the jury of an improper element of damages[]" could be cured by a remittitur but the "Plaintiff has elected not to file the suggested remittitur necessitating the granting of a new trial."

Standard of Review

A trial court's order granting a new trial may be reviewed by an appellate court in a mandamus proceeding. *See In re United Scaffolding, Inc.*, 377 S.W.3d 685, 688-89 (Tex. 2012) (orig. proceeding). A writ of mandamus will issue to correct a clear abuse of discretion committed by a trial court in granting a new trial. *In re Whataburger Rests. LP*, 429 S.W.3d 597, 598 (Tex. 2014) (orig. proceeding) (per curiam) (citing *In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 756-57 (Tex. 2014) (orig. proceeding)). The Texas Supreme Court has stated:

> [A] trial court does not abuse its discretion so long as its stated reason for granting a new trial (1) is a reason for which a new trial is *legally appropriate* (such as a well-defined legal standard or a defect that probably resulted in an improper verdict); and (2) is *specific enough*

to indicate that the trial court did not simply parrot a pro forma template, but rather derived the articulated reasons from the particular facts and circumstances of the case at hand.

*Toyota*, 407 S.W.3d at 756-57 (emphasis in original) (quoting *United Scaffolding*, 377 S.W.3d at 688-89). A new trial order "cannot stand[,]" however, when the "trial court's articulated reasons are not supported by the underlying record." *Id.* at 758. The appellate court continues to apply "the abuse-of-discretion standard . . . to merits review just as it does in all mandamus proceedings." *In re Bent*, 487 S.W.3d 170, 178 (Tex. 2016).

## Arguments of Parties

In this mandamus proceeding, Adams argues that the trial court abused its discretion in conditioning a new trial upon Adams's failure to accept a remittitur when "factually sufficient evidence supported the jury's verdict" that the loss to the remainder of Adams's property was $455,832. The County disagrees and argues that Adams's expert improperly calculated damages and that Adams has been allowed a duplicate recovery.

## Damages Available in a Partial Taking

The measure of compensation in a partial taking is "'the market value of the part taken plus damage to the remainder caused by the condemnation.'" *State v. Petropoulos*, 346 S.W.3d 525, 530 (Tex. 2011) (quoting *Westgate, Ltd. v. State*,

843 S.W.2d 448, 456 (Tex. 1992)). Determination of the fair market value of the remainder property requires measuring the difference between the value of the property immediately before and immediately after the taking. *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 627 (Tex. 2002). Evidence and testimony regarding the cost to relocate certain facilities or improvements may be admissible, "not as a separate element of damage, but as information that could be used by the jury to arrive at the diminished value of the remainder tract after the taking, if any." *City of Sugar Land v. Home & Hearth Sugarland, L.P.*, 215 S.W.3d 503, 514 (Tex. App.—Eastland 2007, pet. denied). Cost to cure is a method of decreasing the amount of damages below the diminution in market value, not increasing the damages beyond the diminution in market value caused by the taking. *Id.* "This approach allows the property owner to recover the cost to cure the portion of the damage that can be cured, plus any diminution in value to the remainder which cannot be cured, when the total of those two is less than the overall diminution in value of the remainder uncured." 4A *Nichols*, *Eminent Domain*, § 14.02[3][d].

To be admissible evidence upon which the jury may base its award of damages, the expert's calculation must be based upon a reliable methodology. *See E.I. du Pont de Nemours and Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). To the extent that Baer calculated cost to cure as a distinct element of

10

damage separate from the diminution in the fair market value of the improvements, the trial court reasonably could have concluded that Baer's testimony had been improperly admitted before the jury and was factually insufficient to support the damage award because his methodology was unreliable. *See Home & Hearth Sugarland*, 215 S.W.3d at 510. After reviewing Adams's petition, the record, and the response filed by the real party in interest, Jefferson County, as well as the reply brief, we conclude that the trial court provided a reasonably specific and valid explanation for granting the motion for new trial that is supported by the record. *See Toyota*, 407 S.W.3d at 759-60. Accordingly, we deny the petition for a writ of mandamus.

      PETITION DENIED.

PER CURIAM

Submitted on September 23, 2016
Opinion Delivered November 17, 2016

Before McKeithen, C.J., Kreger and Johnson, JJ.