# IN THE SUPREME COURT OF TEXAS

No. 17-0049

STEPHEN MORALE D/B/A ACTION COLLISION REPAIR AND KIMBERLY MORALE,
PETITIONERS,

v.

THE STATE OF TEXAS, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

**PER CURIAM**

The issues in this appeal of a condemnation judgment are whether the trial court erroneously admitted and excluded various evidence at trial, thereby probably resulting in rendition of an improper judgment. We hold that the trial court's evidentiary holdings were not an abuse of discretion. Because the court of appeals held otherwise, we reverse that court's judgment and reinstate the judgment of the trial court.

The State of Texas planned to condemn a portion of a 33,000 square-foot property owned by Stephen and Kimberly Morale in the Town of Little Elm, Texas (the Town), for purposes of improving FM 720 in Denton County. The property was improved with an 8,831 square-foot building used for the Morales' vehicle collision repair business. Specifically, the State planned to take a 3,200 square-foot strip of land, which included a metal canopy used by the business that would have to be demolished as part of the taking.

The State's appraiser, Jennifer Ayers, initially determined that after the taking and the implementation of a "cure plan" involving removal of certain parts of the building, the Morales' property could still be used as a general auto repair shop but not as a collision repair shop. Based on Ayers's determination that the use of the property would change as a result of the taking, the State administratively classified the Morales as "displaced" in May 2012. *See* 43 TEX. ADMIN. CODE § 21.116 ("When a person is required to relocate as a result of the acquisition of right-of-way for a highway project, the [Texas Department of Transportation] will pay the reasonable expenses of relocating the displacee and his or her business and personal property . . . ."). According to department manuals, the classification denotes that the partial taking will render the condemnee "unable to conduct business in the same or similar manner as prior to the acquisition."

The State's land planner, Ronan O'Connor, subsequently developed a second cure plan for reconfiguring the property that would enable the Morales to continue operating their existing business on the site. O'Connor's plan relocated the metal canopy to another location on the property, added a door to the office building, and made adjustments to the parking curbs. In February 2013, Ayers revised her appraisal to incorporate O'Connor's cure plan, determining that the Morales' property could still be used as a collision repair shop. In May 2013, the special commissioners awarded the Morales $49,804 in damages for the taking. The Morales objected to the award and demanded a jury trial. The State formally revoked the Morales' displacee status on November 21, 2013.

The Morales hired their own appraiser, David Bolton, and land planner, Bill Carson. Bolton had developed an initial appraisal in May 2013 based on the assumption that the entire site would be demolished (following from the assumption of displacement). Carson developed two

2

cure plans for reconfiguring the property to continue its use as a collision repair shop. Bolton used one of these plans to make an alternative appraisal based on nondisplacement.

The Morales' property is zoned light commercial, and a collision repair shop is not an authorized use in that zoning classification. The property also had other nonconforming uses, such as unpaved parking. However, these uses all existed before the current zoning restrictions were in place, and, as they were continuous, the uses would be grandfathered-in and considered legally nonconforming. Once a nonconforming use ceases, the grandfathered status is lost. Thus, when Carson developed his cure plans allowing for continued use as a collision repair shop, he had to alter other previously grandfathered, nonconforming uses of the property (e.g., the use of the parking lot), which in turn required additional modifications to bring the new use "up to conformity" with applicable Town zoning ordinances.

Before trial, the State moved to exclude any evidence relating to the Morales' revoked displacee status. The trial court denied the motion. The State presented evidence at trial, through Ayers's testimony of her appraisal based on implementation of the O'Connor cure plan, that the compensation owed the Morales was $122,953. David Bolton, the Morales' appraiser, testified to two values. First, he testified to what he called his "displaced valuation" of $1,262,947, constituting the loss in fair market value of the property if all improvements were razed. He alternatively testified that if one of Carson's cure plans were implemented, such that the Morales could still use the property to operate a collision repair shop and thus would not be displaced, the Morales would be entitled to $1,064,335. Kimberly Morale testified that the Morales were requesting an award of $1,262,000 because, based on her knowledge of the property's highest and best use, they were being displaced.

3

The parties also disputed the admissibility of evidence regarding the Town's zoning regulations and the effect they would have on the property after condemnation. At trial, the State offered the testimony of city engineer Jason Laumer and city attorney Robert Brown. By referring to the Town's previous grants of zoning variances on unrelated properties, their testimony suggested that the Morales would also be given a zoning variance, allowing them to continue the collision repair business in a legally nonconforming way. Brown and Laumer conceded, however, that they could not testify as to what the Little Elm Town Council would or would not ultimately do. Dusty McAfee, who heads the Town's planning department, testified as a witness for the Morales. Like Brown and Laumer, McAfee could not speak to what the Town would do. But his testimony suggested that a prospective buyer would not believe it was reasonably probable that the Town would grant a zoning variance to make the O'Connor cure plan viable—or at least the buyer would not believe it was as probable as Brown and Laumer painted it. This was a key disagreement because the Morales' ability to continue using the property as a collision repair shop under the O'Connor cure plan (which was the basis for revoking the displacement classification) depended on obtaining a zoning variance.

The trial court admitted the testimony of Bolton and Kimberly Morale, including their discussion of displacement. It excluded Brown's and Laumer's testimony as irrelevant. The jury was asked to determine the difference between the market value of the whole property before the taking and the market value of the remaining property after the taking, considering the effects of the condemnation on the remainder. The jury awarded $1,064,335, Bolton's compensation figure associated with the Morales not being displaced, and the trial court essentially rendered judgment

4

on the verdict.[1] The court of appeals reversed and remanded for a new trial. ___ S.W.3d ___, ___ (Tex. App.—Fort Worth 2016) (mem. op.). It held that the admitted evidence of displacement was both irrelevant to the only issue at trial—"the compensation owed to the Morales for the part taken and for any damages to the Morales' remainder property"—and harmful. *Id.* at ___. The court also held Bolton's displacement appraisal was "based on a land use that was speculative and unsubstantiated," and that "the displacement market value testimony was irrelevant and therefore inadmissible." *Id.* at ___. Finally, the court of appeals held that the trial court erred in excluding Brown's and Laumer's testimony. *Id.* at ___. The Morales petitioned for our review.

Whether to admit or exclude evidence is within the trial court's sound discretion. *See Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). Irrelevant evidence is not admissible. TEX. R. EVID. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." TEX. R. EVID. 401.

The only issue the jury was asked to decide in this case was the amount of just compensation due to the Morales for the partial taking, calculated as the difference between the market value of the entire property before the taking and the market value of the remainder property after the taking, considering the effects of the condemnation. *State v. Petropoulos*, 346 S.W.3d 525, 530 (Tex. 2011). "The factfinder may consider the highest and best use of the condemned land," which is presumed to be "the existing use of the land." *Enbridge Pipelines (E. Tex.) L.P. v. Avinger Timber, LLC*, 386 S.W.3d 256, 261 (Tex. 2012). A disagreement between

---

[1] An unexplained $20 discrepancy between the jury finding ($1,064,335) and the trial court's judgment ($1,064,355) has not been challenged on appeal.

experts as to the value of land after condemnation is part and parcel of trial. *See, e.g., State v. Dawmar Partners, Ltd.*, 267 S.W.3d 875, 877 (Tex. 2008) ("[T]here was considerable conflicting evidence regarding the highest and best use of the property before and after the taking."); *State v. Windham*, 837 S.W.2d 73, 77 (Tex. 1992).

Here, the collision repair shop was the existing use of the land at the time of the taking and thus was also the presumed highest and best use. The State's initial displacement classification, though later revoked, reflected the risk that the taking would cause the loss of that use. The court of appeals held that "the fact that the Morales were considered displaced . . . does not make it more probable that the State at one time believed that the taking itself caused a change in the property's use" because the classification "was based on a combination of the effect of the taking and Ayers's proposed cure plan." ___ S.W.3d at ___. We disagree with this faulty premise. Ayers's cure plan merely reflected her conclusion that, at best, the property's highest and best use after the taking would still change. Certainly the State was entitled to, and did, present evidence explaining to the jury why the initial displacement classification was incorrect and why the taking ultimately did not prevent the Morales from continuing to use the property as a collision repair shop. But while the State may have changed its theory of the land's potential uses after the taking, we cannot say that the initial classification was wholly irrelevant to the property's highest and best use, and its corresponding market value, after the taking.

The court of appeals further faulted the Morales for presenting the displacement evidence in a manner "that pointedly suggested that the State's revocation of displacement status was suspicious" and "to suggest that the State's valuation testimony and evidence was false." *Id.* at ___. It reasoned that the Morales' questioning of the State's witnesses on displacement "did not

add any new information about the property's market value before or after the taking." *Id.* at \_\_\_. Even to the extent these colloquies were suggestive, they were not improper. If, as we have held, the State's classifying the Morales as displaced (and then revoking that classification) is relevant to the issues in the case, then the State's motivations for doing so are pertinent as well. *Cf. City of Austin v. Whittington*, 384 S.W.3d 766, 777 (Tex. 2012) (reiterating that a landowner may contest a condemnor's determinations of public use or necessity by establishing fraud, bad faith, or arbitrariness). Inquiries into the nature of the displacement revocation are probative in an adversarial trial in which the plaintiffs seek damages (at least in the alternative) based on their alleged displacement. And, as noted, the State presented its own evidence to the jury about its proper reasons for the revocation.

The court of appeals next held that Bolton's $1.2 million displacement valuation testimony was speculative and therefore inadmissible. We have held that expert testimony in condemnation cases is inadmissible if it relates to "remote, speculative, and conjectural uses" of the property that "are not reflected in the present market value of the property." *State v. Schmidt*, 867 S.W.2d 769, 773 (Tex. 1993) (quoting *State v. Carpenter*, 89 S.W.2d 194, 200 (Tex. 1936)). The court of appeals faulted Bolton's displacement valuation because it "simply assumed that the Morales would have to relocate their business" and that "the improvements could not remain on the property." \_\_\_ S.W.3d at \_\_\_. However, an expert's opinion may assume facts established by legally sufficient evidence. *See Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848, 863 (Tex. 2017); *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499–500 (Tex. 1995).

In *Schmidt*, the "flaw" in the landowners' damages theory was that it did not assume a willing buyer; rather, it assumed "a buyer constrained to buy or abandon his plans for the use of

7

his other property." 867 S.W.2d at 775. And in *State v. Little Elm Plaza, Ltd.*, an expert's valuation testimony "went too far" because the expert treated demolition of the "buildings as a certainty, rather than a market-affecting factor," even though there were several reasons that a complete razing was far from certain. No. 02-11-00037-CV, 2012 WL 5258695, at *12–14 (Tex. App.—Fort Worth Oct. 25, 2012, pet. dism'd) (mem. op.). That made the expert's testimony inadmissibly speculative. *See id.*

Unlike that testimony, Bolton's assumption that the Morales could not continue the property's existing use is grounded in evidence such as Kimberly Morale's testimony and the initial displacement classification. Building off his assumption of displacement (due to required cessation of the existing use), Bolton assumed the improvements no longer fulfilled their function as an automobile repair facility and could not be utilized after the taking, such that the improvements would need to be razed. Bolton assumed a willing buyer of that property, *see Schmidt*, 867 S.W.2d at 775, who would look at the property and, in Bolton's words, conclude that "this was designed for an auto collision body shop and it's not going to work like that anymore . . . those [improvements] are going to come down and I'm going to redevelop the site." Bolton appropriately *did not* assume a buyer who would derive some special benefit from a partially razed improvement once used as a collision repair shop but now unusable as such. *See State v. Moore Outdoor Props., L.P.*, 416 S.W.3d 237, 246 (Tex. App.—El Paso 2013, pet. denied) (explaining that the "willing seller-willing buyer test of market value entails considering factors that would reasonably be given weight in negotiations between a seller and a buyer," which "exclude[s] consideration of purely speculative uses to which the property might be adaptable but wholly unavailable" (citing *City of Austin v. Cannizzo*, 267 S.W.2d 808, 814 (Tex. 1954))); *cf.*

8

*Enbridge*, 386 S.W.3d at 262 ("The value-to-the-taker rule prohibits an owner from receiving an award based on a tract's special value to the taker, as distinguished from its value to others who may or may not possess the power to condemn.").

The excluded *Little Elm Plaza* testimony (on which the court of appeals relied) and Bolton's testimony are similar in the sense that both experts opine about the value of land with its improvements completely razed. But they are distinguishable in important respects. Unlike *Little Elm Plaza*, there is a legitimate question as to whether complete razing of the improvements could be avoided. For example, Ayers "did not suggest tearing down all of the improvements," but she did suggest "tearing down *part* of their building." ___ S.W.3d at ___. And although she testified that the business could still operate as a *general* auto repair business, she testified at first that the demolition would make the property unsuitable for the Morales' *existing* business. *Id.* Further, Ayers's revised analysis assumed the O'Connor plan could be implemented, allowing continued use of the property as a collision repair shop. However, she did not account for uncertainty about its implementation due to unknown factors such as the Town's approval of the cure plan. And unlike the excluded *Little Elm Plaza* expert, Bolton acknowledged the possibility that zoning variances would be granted and that displacement may not be necessary. But he did not improperly assume facts with an insufficient evidentiary basis. In sum, the State was free to cross-examine Bolton on his assumptions, but they did not render his testimony wholly speculative and therefore inadmissible.

Finally, we disagree with the court of appeals' conclusion that the trial court erroneously excluded Brown's and Laumer's testimony about the Town's previous zoning-related actions. We

9

hold the trial court did not abuse its discretion by excluding this testimony as irrelevant because it did not address the Morales' specific property.

In *Little Elm Plaza*, the court of appeals held that testimony that demolition would be required was inadmissibly speculative because it suggested demolition was certain and ignored the town's stated intention to accommodate the nonconforming property. *See* 2012 WL 5258695, at *13. Conversely, in their testimony, Brown and Laumer dismissed the fact that the Town had made no commitments to the Morales to specially accommodate their nonconforming property. Instead, Brown and Laumer relied exclusively on previous examples of the Town's granting zoning variances to other properties to suggest the pattern will repeat for the Morales. Their testimony was sufficiently speculative that it was within the trial court's discretion to exclude it.

Even if Brown's and Laumer's testimony were admissible, its exclusion was not harmful. Erroneous exclusion of evidence is reversible only if it probably resulted in an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1). We have explained that "exclusion is likely harmless if the evidence was cumulative, or if the rest of the evidence was so one-sided that the error likely made no difference." *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 145 (Tex. 2016). The admitted evidence presented by both sides established the real possibility the Town would grant a zoning variance, allowing the collision repair business to continue. Thus, Brown's and Laumer's testimony about that possibility would have been duplicative. Indeed, the damages the jury awarded conformed exactly to Bolton's nondisplacement valuation, in which he assumed a zoning variance would be granted.

In sum, we hold the trial court did not abuse its discretion in admitting evidence about the Morales' alleged displacement, admitting Bolton's displacement valuation testimony, and

excluding Brown's and Laumer's testimony. We reverse the court of appeals' judgment and reinstate the trial court's judgment.

**OPINION DELIVERED:** June 22, 2018