**Affirmed and Memorandum Opinion filed August 6, 2024**



In The

# Fourteenth Court of Appeals

### NO. 14-23-00642-CV

## IN RE COMMITMENT OF KENNETH BRYANT, Appellant

**On Appeal from the 239th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 116521-CV**

## MEMORANDUM OPINION

The State filed a civil petition to commit appellant Kenneth Bryant for involuntary treatment and supervision as a sexually violent predator. *See* Tex. Health & Safety Code §§ 841.001–.151. The jury found that appellant is a sexually violent predator. The trial court rendered a final judgment based on the jury's verdict and signed an order of civil commitment. Appellant appeals, raising three issues. We affirm.

### BACKGROUND

The State filed a petition seeking the civil commitment of appellant as a

sexually violent predator. The State alleged appellant is a repeat sexually-violent offender and also that he suffers from a behavioral abnormality as defined in Chapter 841 of the Texas Health and Safety Code. *See* Tex. Health & Safety Code § 841.003. The case against appellant eventually went to trial. At trial, the State presented two witnesses: Dr. Sheri Gaines and appellant.

The trial court admitted a penitentiary packet into evidence without objection by appellant. The penitentiary packet established that appellant had been convicted of two aggravated sexual assault of a child charges. The judgment within the penitentiary packet shows that appellant was sentenced to serve eight years in prison for each offense, with the sentences running concurrently. Appellant testified that he was serving those sentences at the time of his trial. The victims of those sexual assaults were appellant's step-granddaughters.

Dr. Gaines testified that she is a medical doctor board certified in psychiatry and also in child and adolescent psychiatry. During her trial testimony Dr. Gaines reviewed her background and experience, including working early in her career as a prison psychiatrist in the Texas prison system. Dr. Gaines explained that, at the time of appellant's trial, she split her professional time between a solo psychiatry practice, working as the medical director for the Bayes Achievement Center, and working as a forensic expert witness. Dr. Gaines testified that, as the medical director, she treats patients at the Bayes Achievement Center, a residential treatment facility. Dr. Gaines described her work as an expert forensic witness as a small part of her practice.

Dr. Gaines testified that forensic psychiatry is the area of psychiatry which deals with any aspect of the law or the legal system. Dr. Gaines also stated that forensic psychiatry is a legitimate field of psychiatric expertise. Dr. Gaines further explained that her forensic psychiatry practice has encompassed areas such as

2

competency to stand trial, sanity cases, the existence of mitigating factors on sentencing in capital murder cases, and civil commitment cases such as appellant's. Dr. Gaines testified that she had performed approximately 160 behavioral-abnormality evaluations in the last twenty years.

Dr. Gaines testified about the statutory definition of "behavioral abnormality" as defined in section 841.002(2) of the Texas Health and Safety Code. *See* Tex. Health & Safety Code § 841.002(2). The statute defines "behavioral abnormality" as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* Dr. Gaines explained that behavioral abnormality is not a medical diagnosis, but is instead a legal construct created by the legislature. Dr. Gaines continued that in forensic psychiatry psychiatrists use their medical knowledge and apply that knowledge to the legal term and render an opinion.

Dr. Gaines also testified about the methodology she employed in appellant's case. She stated that the methodology she used is the one she learned in college, medical school, and through her continuing education. According to Dr. Gaines, her methodology is the same methodology typically used by psychiatric experts performing this type of evaluation. Dr. Gaines testified that her evaluation was an objective psychiatric evaluation. She also labeled it "semi-structured" because it included taking a history of present illness, past psychiatric history, medical history, family history, social history, mental status, and diagnoses.

Dr. Gaines then turned to her evaluation of appellant. Dr. Gaines explained that she began by reviewing a packet of appellant's records. The records she reviewed included medical records, police records, depositions, and prison records.

3

Dr. Gaines testified these are the type of records psychiatrists usually rely on when performing a "behavioral abnormality" evaluation. In addition to reviewing appellant's records, Dr. Gaines met with appellant through the prison's telemedicine platform. The interview lasted about 2.5 hours. Appellant agreed to the interview.

Dr. Gaines described appellant as cooperative at the beginning of the interview, but he became increasingly uncooperative as it progressed. According to Dr. Gaines, appellant stopped answering more and more questions, became suspicious, and increasingly irritable. Dr. Gaines stated that appellant exhibited this behavior even though she asked him several times if he wanted to stop the interview. During the interview, appellant denied committing the offenses against his step-granddaughters. Dr. Gaines explained that discrepancies between the official records and what the person being evaluated says happened is very common.

Dr. Gaines testified appellant demonstrated many psychopathic traits during the interview. Dr. Gaines explained that psychopathy is a personality style in which a person tends to be argumentative, lies, is not forthcoming, and denies behaviors. Dr. Gaines testified this is significant because psychopathy is a risk factor for re-offending sexually. According to Dr. Gaines, appellant's behavior during the interview was uncommon because individuals being examined for a behavioral abnormality usually "try to put their best foot forward."

According to Dr. Gaines, her examination of appellant's records revealed that appellant was convicted for sexually assaulting his twin 8-year-old step-granddaughters. According to the records, appellant assaulted the girls numerous times. As mentioned above, appellant was sentenced to serve time in prison for each offense. Appellant's records also revealed that the twins' older sister had

reported that appellant sexually assaulted her. Dr. Gaines testified she had no evidence that appellant was charged for this conduct. In addition, appellant's step-daughter reported that the sexual assault occurred in 1999 when she was 13. Appellant was arrested for this, but the charges were dismissed when appellant pled guilty to a non-sexual offense. Dr. Gaines found the step-daughter's allegations credible because they fit the pattern of appellant's offenses against the twins.

Dr. Gaines next testified about the risk factors appellant has for sexually re-offending. According to Dr. Gaines, "risk factors are empirically derived from literature, from research, that shows that something may be more likely to happen." Dr. Gaines continued that, in the same way there are risk factors for heart attacks, "there are risk factors for being a repeat violent sexual offender." According to Dr. Gaines, there are two "big umbrellas of risk factors" which are (1) deviant sexual interests/behaviors, and (2) anti-social personality traits. Dr. Gaines opined that appellant had risk factors under each umbrella.

Dr. Gaines explained that deviant sexual interests/behaviors are sexual interests outside the norms of society. Dr. Gaines opined that appellant's specific deviant sexual interests are toward prepubescent children. Dr. Gaines continued that, based on her education, training, and experience, sexual deviance does not go away on its own. Dr. Gaines also pointed out that appellant's history of sexually offending against children supports her determination. Dr. Gaines also identified other risk factors for appellant related to sexual deviance during her testimony. These included: (1) appellant continued to deny the offenses occurred and refused to take responsibility for his criminal actions; (2) appellant's offenses were committed when he was under the influence of alcohol; (3) appellant used violence against his victims by holding them down during his assaults; (4) the young age of

5

appellant's victims; (5) the multiple acts on the children involving vaginal and anal penetration; and (6) persistence after punishment.

Turning to the second umbrella of risk factors, Dr. Gaines testified that appellant's denial, anger, lying, and being uncooperative with officials are examples of his adult antisocial behaviors. Dr. Gaines saw appellant demonstrate these during their meeting. The records Dr. Gaines reviewed revealed appellant also had a long non-sexual criminal history of battering women and abusing children. According to Dr. Gaines, the fact appellant was placed on probation for a non-sexual offense, and he later violated his probation, is a significant example of appellant's trouble with volitional control.

Dr. Gaines explained that protective factors are things that will keep a person from offending. Dr. Gaines further explained that protective factors are also empirically derived from literature and research. Dr. Gaines, however, considers these factors to be more positive than protective. According to Dr. Gaines, appellant's positive or protective factors include: (1) family support; (2) training and educating himself while in prison; (3) behaving well in prison. Dr. Gaines acknowledged that appellant had participated in a brief sex offender education program while in prison, but she cautioned this class was not the same as a sex offender treatment program. Dr. Gaines was not aware whether appellant had completed the class at the time of his trial. Dr. Gaines stated that, even if she assumed appellant completed the education class, this would not change her opinion that he has a behavioral abnormality because the education program is not sex offender treatment. Dr. Gaines opined that appellant "needs extensive outpatient treatment for a long period of time."

Dr. Gaines used the Diagnostic and Statistical Manual 5 (DSM-5), which is a reference book used by mental health professionals. The DSM-5 includes the

6

diagnostic criteria for mental health diagnoses. Using the DSM-5, Dr. Gaines diagnosed appellant with pedophilic disorder, adult antisocial behaviors, and borderline intellectual functioning. According to Dr. Gaines, appellant's two convictions for sexual offenses support her diagnosis of pedophilic disorder. Dr. Gaines stated that pedophilic disorder is a congenital or acquired condition affecting appellant's emotional or volitional capacity. In addition, pedophilic disorder is chronic.

Based on Dr. Gaines's education, training, experience, and the methodology she employed in her evaluation of appellant, she opined that appellant suffers from a behavioral abnormality as defined in the Health and Safety Code which makes him likely to engage in a predatory act of sexual violence. In forming her opinion, Dr. Gaines relied on the information she gathered from appellant's records and her interview of appellant. Appellant's records reviewed by Dr. Gaines reveal that an initial evaluation of appellant was performed by a psychologist named Dr. Turner who opined that appellant has a behavioral abnormality. According to Dr. Gaines, appellant has an established pattern of sexually offending against young girls. Dr. Gaines further opined that appellant's pedophilic disorder still affects his emotional or volitional capacity and renders him a menace to the health and safety of others. According to Dr. Gaines, her evaluation of appellant was performed in accordance with her training as a psychiatrist, and in accordance with the accepted terms in the field of psychiatry.

The State called appellant to testify. Appellant admitted that he had been convicted of two counts of sexual assault of a child. Appellant admitted that he was an alcoholic and that he became violent when he drank alcohol. Appellant denied that he was sexually attracted to his step-granddaughters. Appellant also denied that he had sexually assaulted his step-granddaughters. Appellant testified

7

that he did not believe he was at any risk of reoffending sexually. Appellant also testified that he did not believe he needed sex offender treatment. Regarding the accusations made by his step-granddaughters, appellant observed that children can be coached. Appellant added that he believed the accusations were instigated by the girls' grandmother who wanted to get money from him and said that she would make him suffer if he did not give her any.

Appellant did not call any witnesses on his behalf, nor introduce any exhibits into evidence.

A unanimous jury found beyond a reasonable doubt that appellant is a sexually violent predator. The trial court signed a final judgment based on the verdict. The trial court also signed an order of civil commitment. This appeal followed.

**ANALYSIS**

Appellant raises three issues in his appeal. We address them in order.

## I. The evidence is legally sufficient.

In his first issue appellant argues that the evidence is legally insufficient to support a finding that he is a sexually violent predator. Appellant primarily argues the evidence is legally insufficient because Dr. Gaines's opinion was unreliable and thus constituted no evidence to support the jury's finding that appellant was a sexually violent predator. Appellant also makes other arguments within his first issue. These include that his due process rights were violated, and that the evidence is insufficient because the State failed to prove that he had "serious difficulty controlling his behavior."

### A. Standard of review and applicable law

The commitment of a person as a sexually violent predator is a civil

proceeding. *In re Commitment of Fisher*, 164 S.W.3d 637, 645–53 (Tex. 2005). The Civil Commitment of Sexually Violent Predators Act (Act) requires the State to prove beyond a reasonable doubt that a person is a sexually violent predator. *See* Tex. Health & Safety Code § 841.062(a); *In re Commitment of Harris*, 541 S.W.3d 322, 327 (Tex. App.—Houston [14th Dist.] 2017, no pet.). A person is a sexually violent predator if he (1) is a repeat sexually violent offender, and (2) suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See* Tex. Health & Safety Code § 841.003(a); *In re Commitment of Weisinger*, No. 14-22-00210-CV, 2023 WL 7498195, at *8 (Tex. App.—Houston [14th Dist.] Nov. 14, 2023, no pet.) (mem. op.) (stating the "Supreme Court of Texas has clarified that the two statutory elements — repeat sexually violent predator and behavioral abnormality — are the only factors courts should consider in a sufficiency review."). The Act requires evidence of both repeat past sexually violent behavior and a present condition that creates a likelihood of such conduct in the future. *In re Commitment of Stoddard*, 619 S.W.3d 665, 678 (Tex. 2020).

We consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found beyond a reasonable doubt the elements required for commitment. *Id.* We may not, however, ignore "undisputed facts that do not support the finding." *In re Commitment of Stoddard*, 619 S.W.3d at 674. The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *In re Commitment of Harris*, 541 S.W.3d at 327. We presume the jury resolved disputed facts in favor of the finding if a reasonable factfinder could do so. *In re Commitment of Stoddard*, 619 S.W.3d at 674.

An expert witness may testify regarding scientific, technical, or other

specialized matters if the expert is qualified, his or her opinions are relevant, and the opinion is based on a reliable foundation. *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 637 (Tex. 2009). When applying this reliability standard, a trial court does not decide whether the expert's conclusions are correct. *Exxon Pipeline Co. v. Zwehr*, 88 S.W.3d 623, 629 (Tex. 2002); *E.I. du Pont de Namours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995) (stating that a trial court is not to determine whether an expert's opinion is true or false). Instead, a court determines whether the analysis used by the expert to reach the expert's conclusions is reliable. *Zwehr*, 88 S.W.3d at 629. To be reliable an expert's opinion must be based on sound reasoning and methodology. *State v. Central Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009).

No objection to the admission of an expert's opinion is required when the expert's testimony is conclusory and lacks probative value as a result. *Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004). A conclusory statement is one that expresses a factual inference without providing underlying facts to support that conclusion. *Padilla v. Metro. Transit Auth. of Harris Cnty.*, 497 S.W.3d 78, 85 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Conclusory testimony cannot support a judgment because it is considered no evidence. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, L.L.C.*, 572 S.W.3d 213, 222 (Tex. 2019). An expert's testimony is conclusory when the expert asserts a conclusion with no basis. *Id.* at 223. The expert must link her conclusions to the facts, explaining the basis of her assertions. *Id.* Additionally, an expert's experience alone may be a sufficient basis for expert testimony. *Id.* at 227. But, asking the jury to take the expert's word for it because of her status as an expert will not suffice. *Id.* at 223. Thus, a judgment may not be supported by conclusory expert testimony even if a party did not object to admission of such

10

testimony. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009). This principle applies when the expert offers no basis for her opinion, or the basis offered by the expert provides no support. *Id.* at 818. The supreme court has made it clear that "a claim will not stand or fall on the mere ipse dixit of a credentialed witness." *Id.*

**B.      "Serious difficulty controlling behavior" is not a statutory element the State was required to prove.**

Within his first issue, appellant appears to argue that a necessary element of a State's civil commitment case is a finding that the person has serious difficulty controlling his behavior. We disagree. The Supreme Court of Texas has already determined that proof of the two statutorily-defined elements, set out above, meets constitutional requirements. *In re Commitment of Stoddard*, 619 S.W.3d at 674; *see In re Commitment of Wirtz*, 451 S.W.3d 462, 466 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (stating that "the jury's finding Wirtz is a sexually violent predator entails a determination that he has serious difficulty controlling behavior") (internal quotations omitted). We therefore turn to whether the evidence is legally sufficient to support the jury's determination that appellant is a sexually violent predator.

**C.      Dr. Gaines's opinion was not speculative or conclusory.**

Next, appellant argues that the evidence is legally insufficient because Dr. Gaines's opinion was, among other things, misleading and incorrect because she testified that appellant "has a behavioral abnormality and that a brief education program is not going to change that, that he needs extensive outpatient treatment for a long period of time." In appellant's view this testimony conveyed the false impression to the jury that it was determining whether appellant would need outpatient treatment upon his release from prison and thereby deprived appellant of

11

due process and also created an analytical gap in her opinion.

When determining whether an expert's opinion is reliable, we do not examine whether the opinion is true or false. *Gharda USA, Inc. v. Control Sols, Inc.*, 464 S.W.3d 338, 349 (Tex. 2015). Instead, a "trial court's gatekeeping function under Rule 702 does not supplant cross-examination as the traditional and appropriate means of attacking shaky but admissible evidence." *Gammill v. Jack William Chevrolet, Inc.*, 972 S.W.2d 713, 728 (Tex. 1998). Here, appellant had the opportunity to cross-examine Dr. Gaines on her opinion and to also call his own expert witnesses to challenge Dr. Gaines's opinion; therefore, his right to due process was not violated by Dr. Gaines's allegedly false impression testimony. *See Matzen v. McLane*, 659 S.W.3d 381, 392 (Tex. 2021) (stating that due process generally requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner). Further, the fact that Dr. Gaines's opinion may have been incorrect about outpatient services does not render her opinion unreliable and therefore inadmissible.[1] *See Morale v. State*, 557 S.W.3d 569, 576 (Tex. 2018) ("In sum, the State was free to cross-examine Bolton on his assumptions, but they did not render his testimony wholly speculative and therefore inadmissible.").

Next appellant argues that Dr. Gaines's opinion is unreliable because she did not consult any medical literature or studies in preparing her opinion in this case. He also argues that Dr. Gaines was not objective in forming her opinion because she did not use and rely on tests such as the Static-99 or PCL-R. We disagree with both contentions.

First, Dr. Gaines specifically testified that she used the DSM-5 in preparing

---

[1] We point out that Dr. Gaines never testified to the location where she believed appellant should receive "extensive outpatient treatment." In addition, appellant chose not to cross-examine Dr. Gaines on this subject.

her opinion. Dr. Gaines explained that the DSM-5 contains diagnostic criteria for mental health diagnoses and is a reference book routinely used by mental health professionals. Dr. Gaines testified that she used the DSM-5 when she diagnosed appellant with pedophilic disorder, adult antisocial behaviors, and borderline intellectual functioning.

In addition, Dr. Gaines testified that the methodology she used in forming her opinion in this case was a methodology that she learned in college, medical school, and in her continuing education as a psychiatrist. Dr. Gaines explained that her methodology was the same methodology used by similar professionals performing this type of evaluation. Dr. Gaines continued that her methodology began with an examination of appellant's records, which included a report prepared by a psychologist, Dr. Turner. According to Dr. Gaines, Dr. Turner also concluded that appellant had a behavioral abnormality. Dr. Gaines also testified that her methodology involved a lengthy interview of appellant that was conducted in accordance with her training as a psychiatrist. During this interview, which Dr. Gaines labeled "semi-structured," she covered appellant's history of present illness, past psychiatric history, medical history, family and social history, mental status, and diagnoses. She also explained why this type of information is important when evaluating a person such as appellant for a behavioral abnormality: she explained that past behavior is a good indicator of future behavior. While Dr. Gaines did not use tools such as the Static-99 or PCL-R she offered an explanation why she did not — these are tools routinely used by psychologists, not psychiatrists. Dr. Gaines testified that Dr. Turner did administer a Static-99 to appellant as part of his evaluation of appellant. Based on this information Dr. Gaines testified that she identified risk factors for appellant, which are summarized above. We conclude that Dr. Gaines had a reliable foundation for the development

13

of her opinion and that her opinion was objectively derived as a result. *See In re Commitment of Throm*, No. 14-19-00575-CV, 2021 WL 1185100, at \*5 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (mem. op.) (holding psychiatrist's opinion developed using similar methodology was reliable). The fact appellant might disagree with Dr. Gaines's methodology or prefer a psychologist's methodology to that of a psychiatrist, does not render Dr. Gaines's opinion unreliable and inadmissible. Instead, appellant's course was to challenge Dr. Gaines's opinion through cross-examination. *See Morale*, 557 S.W.3d at 576.

We also reject appellant's contention that Dr. Gaines's opinion was conclusory because she offered a thorough explanation, detailed above, on how she developed her opinion that appellant had a behavioral abnormality. *See Bombardier Aerospace Corp.*, 572 S.W.3d at 223 (stating that an expert's testimony is conclusory when the expert asserts a conclusion with no basis); *In re Commitment of Throm*, 2021 WL 1185100, at \*5 (rejecting argument that psychiatrist's opinions had no probative value because they lacked foundation and were conclusory).

Because we have rejected appellant's arguments raised within his first issue, we overrule that issue.

## II. The trial court did not abuse its discretion when it rejected appellant's requested jury instruction.

In his second issue appellant argues that the trial court abused its discretion when it rejected his proposed jury instruction on the burden of proof in his case. Appellant proposed the following instruction:

> All persons are presumed not to be a sexually violent predator and no person may be determined to be a sexually violent predator unless the State proves each element in its cause of action beyond a reasonable doubt. The fact that Respondent has been alleged to be a sexually

14

violent predator by the State of Texas gives rise to no inference of him being a sexually violent predator at his trial.

The State opposed appellant's proposed instruction arguing that it was not appropriate in a civil proceeding. The trial court denied appellant's proposed instruction. It reasoned that other language in the charge discussing the State's burden of proof made appellant's requested instruction unnecessary.

The trial court's charge included the following:

> A "yes" answer must be based on a belief beyond a reasonable doubt. The burden of proof in this case rests solely on the [State] and the burden never shifts to [appellant] to prove that he is not a sexually violent predator. This means the [State] must prove each element of its cause of action beyond a reasonable doubt. If you do not find beyond a reasonable doubt that the evidence supports a "yes" answer, then answer "no."

The trial court's charge also contained this paragraph:

> The burden of proof in this case rests upon the State throughout the trial and never shifts to the [appellant]. The State has the burden of proving that the [appellant] is a sexually violent predator, and it must do so by proving this beyond a reasonable doubt. It is not required that the State prove this beyond all possible doubt. It is required that the State's proof excludes all reasonable doubt concerning whether or not the [appellant] is a sexually violent predator. In the event you have a reasonable doubt as to whether or not the [appellant] is a sexually violent predator after considering all the evidence before you and these instructions, you will say by your verdict that the [appellant] is not a sexually violent predator.

In his second issue, appellant asserts that civil commitment cases are tantamount to criminal cases and argues the trial court's instructions on the State's burden of proof were insufficient.

## A.   Standard of review

15

A trial court must submit in its charge to the jury all questions, instructions, and definitions that are raised by the pleadings and the evidence. *See* Tex. R. Civ. P. 278; *E.I. DuPont de Nemours & Co v. Roye*, 447 S.W.3d 48, 56 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd) (citing *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 663–64 (Tex. 1999)). The parties have the right to be judged by a jury properly instructed in the law. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex. 2000). The goal, therefore, is to submit to the jury the issues for decision logically, simply, clearly, fairly, correctly, and completely. *Roye*, 447 S.W.3d at 56. To achieve this goal, trial courts enjoy broad discretion so long as the charge is legally correct. *Id.* Determining what jury instructions are necessary and proper is within the trial court's discretion. *Shupe v. Lingafelter*, 192 S.W3d 577, 579 (Tex. 2006). When a trial court refuses to submit a requested instruction or definition, the issue on appeal is whether the request was reasonably necessary to enable the jury to render a proper verdict. *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 405 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.). We review the trial court's decision for an abuse of discretion. *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012).

**B.    Additional instructions on the State's burden of proof were not reasonably necessary because the substance of appellant's proposed instruction was included in the charge.**

This court has previously addressed, and rejected, the argument raised by appellant here. *See In re Commitment of Mueller*, No. 14-23-00044-CV, 2023 WL 8943743 at *10 (Tex. App.—Houston [14th Dist.] Dec. 28, 2023, pet. denied) (mem. op.) ("Here, because the charge submitted to the jury included instructions substantially similar to those requested by [the respondent], the trial court did not abuse its discretion by refusing [the respondent's] request."). Because the facts present in this appeal are indistinguishable from those involved in *Mueller*, we are

16

bound by our prior decision. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022) (concluding that under the doctrine of horizontal stare decisis a court of appeals must follow a materially indistinguishable prior decision of the court of appeals decision). We overrule appellant's second issue.

### III. Appellant did not preserve his third issue for appellate review.

In his third issue appellant argues that his due process rights were violated because the State allegedly sought to have him civilly committed in compensation for the light prison sentences resulting from his sexual assaults against his step-granddaughters. The State responds that appellant failed to preserve this argument in the trial court. We agree with the State.

To preserve a complaint on appeal, Rule 33.1 of the Rules of Appellate Procedure requires the record to show that a specific complaint was made to the trial court by a timely request, objection, or motion, and that the trial court ruled on that request, objection, or motion. Tex. R. App. P. 33.1(a). Even constitutional complaints must be preserved in the trial court. *In re L.N.C.*, 573 S.W.3d 309, 327 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). This includes due process complaints. *See In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003) (holding that, to preserve a due process complaint for appellate review, a party must present the complaint to the trial court by timely request, objection, or motion, state the specific grounds for the complaint, and obtain a ruling); *Fontenot v. Fontenot*, 667 S.W.3d 894, 912 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (concluding party failed to preserve due-process complaint by failing to make that complaint in the trial court).

We have reviewed the entire record in this appeal. Appellant did not raise a due process complaint about the State's decision to seek his civil commitment as a sexually violent predator before or during his trial. Appellant also did not make a

17

due process argument after his trial in his motion for new trial. We conclude appellant did not preserve his due process complaint for appellate review. We overrule his third issue.

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the trial court's judgment.


/s/    Jerry Zimmerer
Justice


Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.